IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>DAVID A. SHOCKLEY,<br>Defendant. | Case No. 12–CR–40103–JPG–4 |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant David A. Shockley's Motion for Compassionate Release, (ECF No. 774); and the Federal Public Defender's ("FPD's") Motion to Withdraw as Attorney and Appoint CJA Counsel ("Motion to Withdraw"), (ECF No. 812). For the reasons below, the Court:

- **GRANTS** the FPD's Motion to Withdraw **IN PART**—Julie K. Morian **WITHDRAWN**;

- **DENIES** the FPD's Motion to Withdraw **IN PART**—no other appointment of counsel; and

- **DENIES** Shockley's Motion for Compassionate Release.

## I. PROCEDURAL & FACTUAL HISTORY

### A. The Conviction

In 2012, a federal grand jury in this District indicted Shockley for conspiring to manufacture methamphetamine. (Superseding Indictment 1, ECF No. 32; *see also* Second Superseding Indictment, ECF No. 116). He pleaded guilty the next year, (Plea Agreement 1, 9, ECF No. 237); and the Court sentenced him to a 180-month term of imprisonment, (Judgment 2, ECF No. 343). He is currently incarcerated at Federal Transfer Center ("FTC") Oklahoma City in Oklahoma. (Def.'s Mot. for Compassionate Release at 22).

### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Shockley's background. (*See* First Revised PSR 1, ECF No. 301).

According to the PSR, state law-enforcement officers discovered that Shockley, with at least eight others, was involved "in the manufacture, distribution, and use of methamphetamine." (*Id.* at 4). Shockley was tasked with obtaining pseudoephedrine pills, a precursor used in the manufacture of methamphetamine. (*Id.* at 5). A source informed law enforcement that "Shockley had purchased pseudoephedrine pills for him on at least eight to ten occasions." (*Id.*). He was "known to carry a weapon during his methamphetamine involvement and sometimes threatened other individuals involved in this conspiracy." (*Id.*). Another source also revealed that "Shockley would get extremely violent when he used methamphetamine" and recounted an instance when he "held a gun to her head and forced [her] to cut her own throat." (*Id.*).

On top of this offense, Shockley pleaded guilty to at least 13 other crimes from 1994 to 2011. (*See id.* at 7–16). This includes a 2011 conviction for domestic battery when he struck a woman "in the face with his hand"; a 2004 conviction for unlawful possession of a weapon by a felon when he stabbed a man "in the neck with a knife"; a 2002 conviction for aggravated battery when he struck a woman "in the head with a deadly weapon, a metal flashlight"; and another 2002 conviction for aggravated battery when he beat a man with a club, possibly causing permanent disfigurement. (*See id.*).

### C. Shockley's Motion for Compassionate Release

In June 2020, Shockley moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that serious medical conditions—multiple gunshot wounds that have left him with a "compromised and weakened" immune system, heightened anxiety, and panic attacks—make him especially vulnerable to the COVID-19 virus. (*Id.* at 4).

The COVID-19 virus, of course, is now a global pandemic. At FTC Oklahoma City, 31 inmates currently have COVID-19; 243 have recovered; and one has died. *Coronavirus*, Bureau of Prisons (last visited Nov. 6, 2020).[1] In brief, Shockley argues that his increased risk of experiencing serious complications if he contracted COVID-19 is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 7–9).

The Court appointed FPD Julie K. Morian to represent him, who moved for withdrawal and the appointment of an attorney from the District's Criminal Justice Act ("CJA") Panel. (Morian's Mot. to Withdraw at 1). The Government objected. (Gov't's Resp. 1, ECF No. 813).

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants given the COVID-19 pandemic. Even so, each defendant moving for compassionate release bears the burden of showing *not only* that they face an increased risk to the virus, *but also* that their continued incarceration is unnecessary to advance the statutory purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Shockley failed to meet that burden.

---

[1] *Available at* https://www.bop.gov/coronavirus.

### A. Motion to Withdraw

In August 2020, Chief Judge Nancy J. Rosenstengel issued Fourth Amended Administrative Order 265 ("Administrative Order"), which "delineate[s] procedures for handing motions for compassionate release." Fourth Am. Admin. Order 265 at 1–2 (Aug. 14, 2020).[2]

> As a service to the affected defendants and the Court, the [FPD] Office is willing to enter its appearance on behalf of all defendants who file a pro se motion directly with this district court for compassionate relief pursuant to Section 603(b) of the First Step Act. . . . Due to the volume of motions being filed, the FPD may assign up to forty percent (40%) of all Compassionate Release requests to members of the district's [CJA] Panel, who may receive a maximum of $2,500 to hand these ancillary matters.

*Id.*

The FPD here seeks to assign this case to a member of the District's CJA Panel under the Administrative Order. (Morian's Mot. to Withdraw at 1). After speaking with Shockley's mother, the FPD states that she "believes Mr. Shockley's circumstances warrant appointment of CJA Counsel to update and supplement his Compassionate Release motion." (*Id.* at 2).

The Government contends, however, that the Court lacks a statutory basis to appoint counsel—FPD or otherwise—in compassionate-release proceedings. (Gov't's Resp. at 1). It points to the Seventh Circuit's decision in *United States Foster*, 706 F.3d 887, 888 (7th Cir. 2013) (holding that because proceedings under 18 U.S.C. 3582(c)(2) are "not part of a criminal prosecutions or a form of collateral attack, . . . prisoners who seek lower sentences following retroactive changes to the Guidelines do not receive counsel at public expense"). In short, the Government argues that absent some statutory or constitutional hook, the Court cannot use public funds on compassionate-release motions.

---

[2] *Available at* http://www.ilsd.uscourts.gov/Forms/AdminOrder265FourthAmendment.pdf.

As will be discussed, the Court disagrees with the FPD's assertion that Shockley's circumstances warrant further supplementation: He is not entitled to compassionate release. The Court therefore need not address the Government's objection.[3] That said, withdrawal is appropriate. The FPD's Motion to Withdraw is therefore **GRANTED IN PART AND DENIED IN PART**.

### B. Motion for Compassionate Release

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

    (1)    The nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    The need for the sentence imposed—

        a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        b. To afford adequate deterrence to criminal conduct;

        c. To protect the public from further crimes of the defendant; and

        d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

---

[3] The Court notes, however, that it rejected the Government's overreading of *Foster* in a recent sealed Memorandum & Order of which the Assistant U.S. Attorney is aware.

  (3)  The kinds of sentences available;

  (4)  The kinds of sentence and the sentencing range established for—

     a. The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

     b. In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

  (5)  Any pertinent policy statement—

     a. Issued by the Sentencing Commission . . .; and

     b. That . . . is in effect on the date the defendant is sentenced[;]

  (6)  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7)  The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.'" *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is inappropriate. *See Shannon*, 518 F.3d at 496.

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons ("BOP") is in the best position to know which inmates are most vulnerable to COVID-19 and whether they still pose a public-safety risk. And since

March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 6, 2020).[4] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Not only was Shockley convicted of a serious drug offense, but it was just one of many convictions in a decades-long history of crime. By all accounts, Shockley has anger-management issues that often result in terrible violence. Despite serving time for various other reprehensible crimes, Shockley was still committed to building a reputation based on fear and intimidation. His Motion for Compassionate Release failed to adequately address whether he still poses a public-safety risk beyond conclusory assertions. Although incarceration has apparently been ineffective in rehabilitating him, the public still has a strong interest in preventing Shockley from committing further crimes. In other words, even if he is at increased risk for severe illness from the virus that causes COVID-19,[5] Shockley's continued incarceration is necessary to adequately promote respect for the law, to reflect the seriousness of the offense, and to deter further criminal conduct from himself and others. His Motion for Compassionate Release is therefore **DENIED**.

---

[4] *Available at* https://www.bop.gov/coronavirus/.
[5] This is speculative. The Centers for Disease Control and Prevention recognizes that those with a weakened immune system "from solid organ transplant . . . **are at severe risk**"; and those with a weakened immune system "from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines . . . **might be at an increased risk**." *People with Certain Medical Conditions*, Ctrs. For Disease Control & Prevention (updated Nov. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (emphasis in original). Shockley does not state which camp, if either, he is in. In any event, the § 3553(a) factors weight against a sentence modification.

### III. CONCLUSION

The Court**:**

- **GRANTS** the FPD's Motion to Withdraw **IN PART**—Julie K. Morian **WITHDRAWN**;

- **DENIES** the FPD's Motion to Withdraw **IN PART**—no other appointment of counsel; and

- **DENIES** Shockley's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, November 6, 2020**

              **S/J. Phil Gilbert**
              **J. PHIL GILBERT**
              **UNITED STATES DISTRICT JUDGE**